[Civ. No. 56045. Second Dist., Div. Two. Dec. 20, 1979.]

SUSAN T. GOODHUE, Plaintiff and Respondent, v.
BRIAN TUREAUD, Defendant and Appellant.

COUNSEL

Leo Lacy, Jr., for Defendant and Appellant.

Joe Ingber for Plaintiff and Respondent.

OPINION

**ROTH, P. J.**—On April 12, 1976, appellant was convicted by a jury of violating Penal Code sections 209 (kidnaping for the purpose of rob-

bery), 211 (robbery; second degree) and 288a (oral copulation). He was sentenced and incarcerated in the California Medical Facility at Vacaville.[1] This judgment was appealed and affirmed in *People v. Tureaud,* 2d Crim. No. 28718, on December 3, 1976, and a petition for hearing was denied and a remittitur was issued March 4, 1977.

On May 3, 1977, respondent, who was the victim in the criminal matter, filed the civil action which is the subject of this appeal.[2] Personal service of the summons and complaint was effected May 25, 1977. On August 4, the same year, a request to enter default (amended) was filed by respondent, appellant having failed to answer or otherwise appear in the action. A copy thereof was timely served on appellant by mail. Pursuant to respondent's request, a default hearing was held September 29, 1977, and a judgment awarding respondent $25,800 general damages and $25,000 punitive damages was entered February 21, 1978. Notice of entry was also mailed to appellant the same day and a copy of the judgment was served personally on him on March 11, 1978. Appellant's first communication in the matter consisted of his motion to set aside the default, filed May 24, 1978. That motion was denied.

The sole question before us is whether that ruling was justified in light of the principles enunciated in *Payne v. Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565].

In his declaration in support of the motion for relief from default and by way of establishing his inadvertence or excusable neglect, appellant maintained:

"1. This case came on regularly for trial on September 29, 1977. Joe Ingber Esq., appeared as attorney for [respondent]. [Appellant] was not present nor was [he] represented by counsel. Judgment was entered against [appellant] in the amount of $25,800 punitive damages and the amount of $25,000 for general damages, on February 21, 1978.

---

[1] Appellant was represented in the criminal action at the trial and on appeal by retained counsel.

[2] The gravamen of the civil suit based upon some of the same facts involved in the criminal action was that appellant on or about August 27, 1975, "maliciously and wilfully assaulted and battered plaintiff by threatening plaintiff by pointing a realistic simulated revolver at plaintiff, by uttering threats to plaintiff, by touching plaintiff without her consent, by forcing plaintiff to disrobe, and by forcing plaintiff to commit an act or oral copulation on the penis of [appellant] while he threatened plaintiff with said simulated realistic revolver."

"2. [Appellant] desired to be present and also desired to be represented by counsel.

"3. [Appellant] was at the time of the trial and is currently incarcerated.

"4. [Appellant] did not receive the summons in time necessary to respond to complaint, and did not know how he could respond.

"5. [Appellant] attempted to be released so that he could defend himself in the above action.

"6. [Appellant] attempted to obtain the services of a lawyer but was unsuccessful.

"7. The allegations in the complaint are untrue.

"8. Each of the allegations is untrue.

"9. [Appellant] would not have allowed the same judge who sentenced him erroneously to hear a civil suit against him.

"10. Joe Ingber, attorney for [respondent] and Judge Raymond Choate knew of [appellant's] inability to appear.

"11. [Appellant] is indigent and cannot now, nor could he at trial afford an attorney.

"12. [Appellant is a] layman and ignorant as to provisions of the law."

The contention is these assertions place appellant squarely within the holding expressed in *Payne* and require us to reverse the order appealed from denying his motion to set aside the default and vacate the judgment. We do not agree.

In the case cited, Payne, like appellant, was first convicted of the commission of a crime which provided the basis for a subsequent civil suit against him. Though initially represented by counsel who filed an answer in his behalf, Payne, while incarcerated following revocation of probation, suffered a default judgment against him after his attorney was permitted to withdraw based on Payne's inability to pay the attor-

ney's fee. Prior to the judgment, however, though after he was no longer represented, Payne requested the Department of Corrections by letter to allow him to attend the trial (which request was denied) and also in another letter, asked the trial court assigned to the matter to dismiss the action against him, pointing out he was incarcerated. In an extensive analysis of the question whether Payne had been unconstitutionally deprived of his right of access to the courts, either through his personal presence or through representation by appointed counsel in his behalf, a majority of our Supreme Court concluded that since no valid state interests could be advanced in support of the denial of such access, its unqualified deprivation constituted à violation of Payne's rights under the due process and equal protection clauses of both the state and federal Constitutions. (*Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 922-923.) The majority then observed: "The establishment of petitioner's right, however, does not necessarily mandate a particular remedy. Petitioner has demonstrated that the dual deprivation of appointed counsel and the right to personal presence in court is unconstitutional, but not that the denial of each of those rights individually is invalid. Indeed, to grant petitioner an absolute right to both appointed counsel and personal appearance would achieve the anomalous result of according him greater privileges than those possessed by an ordinary indigent civil litigant.

"One possible solution to this dilemma is to accord prisoners the right of personal appearance to defend any action, but to deny indigent prisoners appointed counsel. This approach has the advantage of superficial symmetry. It appears to place the indigent prisoner in the same position as the indigent free person: each would have the right to appear, and to employ counsel if able to do so. However, as has been shown, prisoners do not have the same access to free legal services as other indigents. Equally significant, a prisoner, unlike a free person, is not able to seek out witnesses in his behalf or undertake the investigative functions often needed to defend a civil suit. When these factors are combined with the limited education and intelligence level of substantial numbers of prisoners, it becomes clear that allowing a right of personal appearance is not an appropriate remedy for prisoners seeking to defend a civil action.

"Another alternative is to require trial courts to defer trial of actions against prisoners until their release. When this course of action is not prohibited by law (see, e.g., Code Civ. Proc., § 1054) and postponement will not substantially prejudice the rights of plaintiffs, trial courts may exercise their discretion in this manner.

"However, in many situations, particularly when a defendant is serving a long term of confinement, a postponement will substantially impair the interests of the plaintiff. In those cases the only feasible method of granting access rights to indigent prisoners is appointment of counsel. Whether counsel will be drawn from the ranks of legal aid attorneys, other public or privately funded lawyers serving the disadvantaged, public defenders if so authorized to act, or the private bar, is a question that we leave to the sound discretion of trial courts. We recognize, of course, that funds for payment for the services of the appointed attorneys are unavailable until such time as authorized by the Legislature. (Fn. 6, *ante.*) All we hold is that denial of appointed counsel to an indigent prisoner, when no other relief will preserve his right of access to the courts, is constitutionally impermissible.

"We do not rule that appointment of counsel is an absolute right. However, it is in many instances the only remedy enabling a prisoner to obtain access to the courts. The access right, in turn, comes into existence only when a prisoner is confronted with a bona fide legal action threatening his interests. If a prisoner is merely a nominal defendant with nothing of consequence at stake, no need emerges for an appointed attorney. Thus, before appointing counsel for a defendant prisoner in a civil suit the trial court should determine first whether the prisoner is indigent. If he is indigent and the court decides that a continuance is not feasible, it should then ascertain whether the prisoner's interests are actually at stake in the suit and whether an attorney would be helpful to him under the circumstances of the case. The latter determination should be comparatively simple: if the prisoner is not contesting the suit against him, or any aspect of it, there is no need for counsel; but if he plans to defend the action and an adverse judgment would affect his present or future property rights, an attorney should be appointed. (See *Bagley* v. *Bagley* (1968) *supra*, 292 N.Y.S.2d 796 (personal appearance of prisoner in divorce action held unnecessary where prisoner did not contest divorce); *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 788-789 [36 L.Ed.2d 656, 665-666, 93 S.Ct. 1756] (case-by-case approach adopted to determine necessity of counsel in probation revocation hearings); Tobriner & Cohen, *How Much Process is "Due"? Parolees and Prisoners* (1974) 25 Hastings L.J. 801, 808.)

"While this remedy will probably suffice in most cases, in other instances it may also be desirable for the prisoner to testify on his own behalf. Accordingly, when the trial court determines on motion that the

in-court testimony of a prisoner defendant—whether indigent or not—is needed to protect the due process rights of the parties, it may attempt, through the Department of Corrections, to arrange the presence of the prisoner. Except in a few specified circumstances, a court has no statutory authority to command the Department of Corrections to transport a prisoner to a civil courtroom. But judges do have a constitutional duty to uphold the due process clause. Accordingly, if a court determines that a prisoner's personal testimony is needed to preserve due process rights, but the Department of Corrections refuses accommodation, the court may order a continuance or employ other alternatives to transporting the prisoner, such as recording his testimony or if feasible holding a portion of the trial at the prison." (Fns. omitted.) (*Id.,* at pp. 923-925.)

Respecting the denial by the *Payne* trial court of the motion to vacate the default judgment there, it was further observed: "...Ordinarily, a trial court has discretion to deny a motion to vacate a default judgment. A determination by a court that a judgment was properly taken against a party, even if in error, will not generally be reviewable by mandate. But in the present case the trial court's denial of relief under Code of Civil Procedure section 473 apparently was not an act of discretion, but rather a refusal to exercise discretion. When the court was informed by petitioner that the original judgment was taken against him while he was incarcerated and unable to obtain an attorney or personally appear to defend, a duty arose to determine whether petitioner had been denied meaningful access to the courts. The court, as noted, has the discretion to determine whether petitioner is indigent and whether he stands to be deprived of a substantial interest in the proceedings against him." (Fn. omitted.) (*Id.,* at p. 926.)

As noted previously, appellant maintains these pronouncements apply with equal import to the facts of his case and require our reversal of the trial court's adverse determination, since "[appellant's] failure to contest the judgment because he was denied the means to do so is, of course, excusable neglect as a matter of law." (*Payne v. Superior Court, supra,* 17 Cal.3d 908, 926, fn. 9.)

In our view the majority opinion in *Payne* does not reach so far as to encompass those instances where, as here, in spite of completed valid service of initiation of civil proceedings against him and other completed written notice during the proceeding, a litigant-defendant,

even though incarcerated and indigent, takes no steps appropriately calculated to protect or suggesting a desire to protect his interest prior to suffering a default judgment, nor do we accept as valid the suggestion that the language in *Payne* last above quoted is intended to mean that the only element of timeliness relevant to the inquiry respecting the constitutional rights of persons so situated is that associated with a motion for relief from default, after it has occurred. Rather we are of the opinion that the constitutional rights referred to are subject to waiver through failure to timely assert them and that, as in the case of ordinary civil litigants, they may be deemed to be waived or abandoned if not adequately preserved.[3] In the case at bench there is nothing sufficient to show appellant has met the burden of this requirement.

While appellant asserts he attempted to be released in order to appear in defense, nothing appears in the record to show how that effort was made or responded to; while he claimed to have attempted to obtain counsel, nothing discloses what that attempt consisted of; and while he maintained counsel for respondent and the trial court knew of his inability to appear, nothing is shown or suggested to support the idea either knew he was indigent.

In item 4 of his declaration (*ante*) appellant states he did not receive "the summons in time to respond to the complaint." He does not deny as the record shows that the summons and complaint were actually served upon him at Vacaville Medical Facility at 11:59 a.m. on May 25, 1977. Nor does he deny he, on or about August 4, 1977, received a copy of the notice for a request to enter a default against him on the complaint he had in his possession. In this complaint respondent alleged facts associated with the felony of which appellant had been convicted, and based upon said allegations prayed for actual damages as proved and punitive damages in the sum of $100,000. Appellant does not suggest he did not know the default hearing was set for and heard on September 29, 1977, or that he did not know on or about that date that Judge Choate who presided at his criminal trial was the judge who presided at the default hearing. Appellant in item 6 of his declaration

---

[3]So by way of example, as pointed out in *Payne,* while it is true the inability of a party's counsel to appear owing to his illness would otherwise provide a valid ground for vacating a judgment based on his absence, such is the case only where the party was unable in time to obtain new counsel, the essential point being that one must in all events undertake those actions necessary to maintain the continuing viability of any given circumstance offered in excuse against default. (See *Payne v. Superior Court, supra,* 17 Cal.3d 908 at p. 926, fn. 9.)

states he unsuccessfully attempted to obtain the services of a lawyer. He does not say when or how he made such attempt or attempts although the record shows as noted above appellant was represented by privately retained counsel in the criminal case at the trial and during the appeal of the criminal action. Nor is there any declaration from the said attorney who had over a period of more than one year represented appellant, or of any other person, of any single attempt to consult with any counsel or any such person.

A dispassionate analysis of appellant's declaration in the light of the record impels the conclusion that with or without advice, legal or otherwise, appellant was at no time denied access to the court but elected with calculation the time when he would avail himself of his right to access.

Currently and at the time the motion to vacate was denied, two facts averred in appellant's declaration pertinent to his position were and are unrefuted: (1) appellant was, when the action at bench was initiated, has been at all times during these proceedings, and is now incarcerated, which fact was known to respondent's attorney and the judge who heard the default, and (2) the default hearing in this proceeding was held before and the judgment resulting therefrom was signed by Raymond Choate, the same judge who presided at his criminal trial.

With respect to the first of the undisputed facts, appellant's admission fortified by the record demonstrates he was legally served as an adverse party with all pertinent documents at the state's Vacaville Medical Facility in the same manner as if he were not incarcerated and performed no specific act until approximately 10 months later. Nothing in the record suggests his incarceration prevented timely and appropriate response.

In addressing the second undisputed fact, immediate reaction suggests, if appellant were on the "street" and appeared in pro per or by counsel an affidavit of prejudice (Code Civ. Proc., § 170.6) in the nature of a peremptory challenge to Judge Choate could have been filed. A ready answer, based on the record, is, appellant had ample notice of the intention of respondent to enter appellant's default and could have appeared by counsel to resist that entry but elected not to. Further, if he had been represented by seasoned trial counsel at the default hearing, there is no certainty the challenge to Judge Choate would have

been exercised and finally, there is not a remote suggestion in appellant's declaration, his proposed answer and/or the record that the default hearing was unfairly conducted or the judgment is not based on substantial evidence or is not fair and/or reasonable.

■ Against the suggestion the mere fact Judge Choate presided at the default hearing is per se prejudicial, we observe no case is cited to sustain such a position and we are unaware of any such authority. If the point were raised on grounds of propriety alone, it is a challenge to the inherent integrity of any judge, and of Judge Choate in particular, and nothing in appellant's declaration or the record sustains it.[4]

In brief, appellant had ample continuous opportunity to defend the action against him " ... at a meaningful time and in a meaningful manner." (*Payne, supra,* p. 911.) But instead of doing so, he calculated he could convert the shield of due process into a sword solely because he was incarcerated in a state prison.

The judgment is affirmed.

Fleming, J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 20, 1980.

---

[4]The point raised with respect to Judge Choate's right to hear the default in this action impels the thought that the Legislature might well consider legislation which would give the victim in a criminal action when a defendant is found guilty the option in a case like the present to request the judge who presided at the trial, irrespective of whether by court or jury, to fix a date for a hearing on the subject of damages and enter a judgment for the victim to become effective when the judgment in the criminal case becomes final.